ATLANTIC AND SUBURBAN RAILWAY COMPANY, a corporation,

*v.*

THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ATLANTIC.

[Submitted April 10th, 1915.　Determined June 16th, 1915.]

1. A trolley company operating a railway on a highway entered into an agreement with the freeholders of the county under which the board agreed to contract for the paving of the highway, and the trolley company agreed to pay one-third of the cost. It was provided that the grade established by the county engineer and state road commissioner be accepted by all parties as the grade to which they would conform. The trolley company reconstructed its track to conform to the grade so established, but the paving did not conform to such grade, being above the track in some places, and in others not sloping from the track, thereby causing injury to the track.—*Held,* that, while the trolley company was entitled to an honest execution of the paving contract between the county and the contractor and the construction of a pavement in accordance therewith, its remedy was not by a mandatory decree to compel the relaying of the pavement or by an injunction against an action for its share of the cost until the pavement should be relaid.

2. The certificates of the engineer under the contract between the county and its contractor were not conclusive on the trolley company that the pavement as constructed was at the established grade.

On final hearing.　On bill for specific performance and for injunction.

*Messrs. Bourgeois & Coulomb,* for the complainant.

*Mr. Enoch A. Higbee,* for the defendant.

LEAMING, V. C.

On June 21st, 1909, complainant, a trolley company, was engaged in operating its line of electric railway on a highway, in Atlantic county, known as the Shore Road, under proper authority for that purpose.　On that date it entered into an

agreement with the board of freeholders of Atlantic county, defendants herein, wherein defendant agreed to enter into a contract with a contractor for the paving of the entire Shore road with a macadam pavement with an asphaltum or amiesite binder, or some similar material of like character, and complainant agreed to pay defendant one-third of the total cost. No further stipulation appears in the contract touching the details or characteristics of the pavement which defendant was to cause to be laid. But by a clause of the contract it was provided that the grade which should be established by the county engineer and state road commissioner, and set forth in the contract for letting of the road, should be accepted by all the parties as being the grade to which all parties to the agreement would conform, and another clause provided that the paving should be done under the supervision and the sole direction of defendant under specifications to be approved by the commissioner of public roads of New Jersey in accordance with the Road act of March 27th, 1905, and that the said work should be superintended and under the direction of the inspector or supervisor appointed by the county and state road commissioner. Whether this latter clause bestowed the supervision of the work on the state or on the county officials is not entirely clear; but it clearly removed all right of supervision from the trolley company.

At the completion of the pavement an action at law was brought by defendant against complainant to recover the one-third of the cost of the pavement. The present bill is filed by complainant to enjoin the further prosecution of the action at law and to compel defendant to relay such parts of the pavement as is not constructed in conformity to the contract.

It seems clear that this contract, though meagre in its terms, imposed upon defendant the duty to supply a pavement of the general nature described and at the grade thereafter established, and entitled complainant to the enjoyment of such a pavement at the grade so established.

It is clear from the evidence that a considerable of the pavement as completed was not at the established grade; it is also reasonably clear that complainant is injured thereby. At many places where complainant's tracks are at grade the surface level

of the finished pavement is above the level of the tracks. It is claimed by complainant that by reason of the trough or ·gutter thus formed snow accumulates on the tracks to such an extent as to interfere with the operation of its cars. The evidence discloses that on one occasion this occurred to an extent which prevented operation of the cars. It is also claimed that the elevation of the surface of the pavement above the level of the tracks occasions a raveling or breakage of the amiesite adjacent to the tracks and is operative to expose the foundations of the tracks to increased seepage of water to an injurious extent. It is also claimed by complainant that at many points the finished pavement surface fails to conform to the profile or grade slope from the tracks toward the curbs of the roadway, and that the pavement surface in fact slopes toward the tracks and causes water to run to and on instead of away from the tracks; this, it is claimed, further exposes the foundations of the tracks to injury from water, and this injury is claimed to be aggravated by the improper fraying of the amiesite adjacent to the tracks.

It is impossible to say that these several claims on the part of complainant are without some merit. The trolley road of complainant was reconstructed, by pre-arrangement, in advance of the pavement construction. The grade of the trolley road was established with reference to tacks placed in poles near the sides of the highway by the agency of defendant for that purpose, and the tracks were laid in reasonable conformity to that grade. The paving was laid with reference to the tracks and upon the assumption that the tracks were at grade and with a purpose of conforming the finished surface of the paving adjacent to the tracks to the level of the tracks, and sloping the surface of the paving from the tracks to the curbs. But, through inaccuracy of construction, the surface of the finished pavement in many places did not conform to the level of the tracks, and in many places did not slope away from the tracks as it should have done. That some injury from this inaccurate construction flows to complainant I am unable to doubt.

But I have been unable to reach the conclusion that complainant's appropriate remedy is either by injunction against the trial of the pending actions at law which have been brought for

recovery of the share of cost which complainant has agreed to pay or by a mandatory decree to compel defendant to relay the pavement.

The former remedy would be operative to deny defendant the money they seek until the pavement should be relaid in accordance with the contract; the latter remedy, either alone or in connection with the former remedy, would be enforceable only by proceedings for contempt; and the two remedies alike involve the ascertainment by this court whether the pavement, if relaid, has been made to meet the requirements of the contract. This latter duty this court cannot appropriately assume in this case; it involves in its ultimate determination, not only an ascertainment by this court of the various parts of the work which require reconstruction or alteration, but also involves the continuous supervision of the court over every detail of all reconstruction work and includes in all matters and at all times the exercise of a directing judgment of the court in features of road construction work both practical and technical.

As already pointed out, the contract between the trolley company and the county only provides that the county will cause the pavement to be laid and will establish a grade to which all parties must conform, and that the trolley company shall recompense the county by paying to the county one-third of the total cost of the paving work. The trolley company is not a party to the contract between the county and the road construction contractor; but as the trolley company under its contract with the county is to pay one-third of the cost of construction, that contract must be understood to contemplate not only the execution of an honest paving contract between the county and its contractor, but also the construction of a pavement in accordance with that contract; it necessarily follows that when the trolley company is called upon to pay its one-third of the costs of construction under the latter contract, to which it was not a direct party, it is privileged to inquire whether the work called for by that contract, for which the payment is desired, has been done, and that inquiry necessarily includes an investigation touching every essential detail of the work with reference to that contract.

Certificates of the engineer under the contract between the county' and its contractor may be given their appropriate force in matters within the field of conclusiveness of such certificates; but such certificates cannot, as against the trolley company, which is called upon to pay one-third of the contract cost, make black white or make a pavement at grade which is not at grade. It thus becomes obvious that the award of the relief here sought, if it is to deal fairly with both parties to the suit, requires this court to determine what pavement, if any, must be relaid, and also requires a constant and continuous supervision over the work done pursuant to the court order that it may be ascertained not only that when it is finished it is at grade, but also that it has been done in the manner and of the quality detailed by the contract.

When this suit came on for final hearing the court indulged the sanguine view that it could be easily ascertained whether there had been a substantial compliance with the requirements of the contract. Over two thousand two hundred typewritten pages of testimony have been taken, devoted almost exclusively to matters of levels, details of construction and opinions of experts in road construction touching technical matters. In all these matters the testimony is in radical conflict. The engineers even disagree in running levels at given points from the road side to its centre, and also in ascertaining whether drainage at given points is from the tracks to the curb. Touching what constitutes a substantial compliance with contract grade requirements in contracts of this nature, the expert witnesses also radically differ; some testify that no variations from grade exceeding one-fourth of an inch are allowed in road work of this kind, others are equally positive that one-inch variation is allowable— that is, one inch above and one inch below the grade called for. It is thus manifest that any decree calling for reconstruction will necessarily involve the court in a degree of supervision, direction and final judgment in matters alike, practical and technical, which cannot be properly assumed.

Any attempted review of the authorities touching the jurisdiction of a court of equity in cases of this nature would add little if anything to the literature of the subject. Every text-writer

on specific performance and on equity jurisprudence has treated the subject with reference to the adjudicated cases, and many of the adjudicated cases embody an exhaustive review of the authorities in England and in this country. I think it may be said to be now regarded as an accepted rule, that subject to a few specific exceptions, contracts for building or construction will not be enforced *in specie,* and that the rule finds its essential foundation in the difficulties attendant upon the efforts to enforce and adequately supervise the execution of such decrees, such difficulties emanating from the impracticability of supervision, from the numerous questions which necessarily arise pending or at the conclusion of the enforced work, from the necessary ascertainment of substantial performance, from the extent to which defective performance may be excused and what compensation, if any, may be made for deficiencies; and these difficulties are enlarged and intensified in all cases in which the performance of the contract involves the exercise of skill, judgment and technical knowledge. In *Ross* v. *Union Pacific Railway Co., 1 Woolw. 26, 36,* Mr. Justice Miller reviews the cases forming exceptions to the rule against decreeing specific performance of building contract, and concludes that three concurrent elements exist in all cases which may be regarded as exceptions to the general rule. These elements he defines as follows: "1. In each case, the building was to be done upon the land of the person who agreed to do it. 2. The consideration for the agreement, in every instance, was the sale or conveyance of the land on which the building was to be erected; and the plaintiff had already, by such conveyance on his part, executed the contract. 3. In all of them, the building was in some way essential to the use, or contributory to the value, of adjoining land belonging to the plaintiff."

Perhaps there should be added to the exceptions above noted a somewhat recent line of cases for the enforcement of trackage and operating contracts between railroads. See *6 Pom. Eq. Jur. (2 Pom. Rem.)* § *761.* In an able and exhaustive note on the general subject by Mr. Freeman, appended to *Standard Fashion Co.* v. *Siegel-Cooper Co., 157 N. Y. 60,* as contained in *68 Am. St. Rep. 753,* he says: "While equity aims to supply a

remedy wherever there is a right that cannot be adequately enforced at law, it refuses to be drawn into the absurdity of substituting for an imperfect legal remedy an equitable one less perfect and more cumbersome and inexpedient."

I will advise a decree denying the relief sought.