The bill is filed for specific performance of a contract or for rescission and a restoration of the consideration. On May 12th, 1926, the defendant conveyed to complainants a lot of land seventy-five feet front by one hundred feet deep in Wallington, Bergen county. The deed is in ordinary form except that it contains the following provision: "The party of the first part [defendant] hereby agrees to cut through a street known as Orchard street within one year from the *Page 463 
date of these presents and to lay sidewalks in front of the premises described in the within deed within the said period of time at the expense of the Avenue Realty Company, Incorporated." This is the contract which is the subject of litigation. The year has passed and defendant has utterly failed to perform.
"This court will not ordinarily enforce performance of building contracts, not only on the ground that damages at law are generally an adequate remedy but also on the ground of the inability of the court to see that the work is carried out."Armour v. Connolly, 49 Atl. Rep. 1117. To this rule there are, of course, exceptions. Vice-Chancellor Leaming, in Atlanticand Suburban Railway Co. v. Atlantic County Freeholders,84 N.J. Eq. 618, quoted Mr. Justice Miller's statement of the elements which are found in the cases in which performance has been decreed: "(1) In each case, the building was to be done upon the land of the person who agreed to do it. (2) The consideration for the agreement, in every instance, was the sale or conveyance of the land on which the building was to be erected; and the plaintiff had already, by such conveyance on his part, executed the contract. (3) In all of them the building was in some way essential to the use, or contributory to the value, of adjoining land belonging to the plaintiff." Gregory v. Ingwersen,32 N.J. Eq. 199, exemplifies the exception. In Williams v. Lowe,79 N.J. Eq. 173, defendant agreed to convey to complainant a lot on which there was an unfinished house and agreed to complete the building. The court first decreed specific performance of the contract to convey and allowed to the complainant as an abatement of the purchase price the cost of completion. Upon the suggestion of the defendant that he could complete the building for less than the amount allowed in abatement, the decree was amended so as to require the conveyance of the land for the full purchase price, and also the completion of the building by the defendant. On appeal, Mr. Justice Garrison said: "The objection that the decree as amended is one to enforce a construction contract, *Page 464 
cannot avail the appellant, first, because the agreement is not a construction contract but a contract to convey a house, the completion of which was an incident and not the object of such contract. Second, because the rule invoked, while it justifies the court in refusing to do what it cannot be required to do, does not prevent it from so doing as incidental to other relief in exceptional cases; and third, because the appellant cannot lay as a ground for reversal a feature of the decree made at his own suggestion."
The present case does not come exactly within the exception noted by Vice-Chancellor Leaming. It would fall within that exception if Orchard street had belonged to complainants and they had conveyed it to the defendant for a consideration which included defendant's promise to improve the street. But I do not think this distinction is a bar to the relief sought by complainants. Complainants and defendant are owners of adjoining lands; they became such by a transaction, part of the consideration for which was the agreement of defendant to improve its land in a manner essential to the use of complainants' land. Professor Williston says that the circumstance that the land on which the work is to be done has been acquired by defendant from plaintiff, seems merely one illustration of the situation in which performance will be decreed. He states the general rule: "Where the inadequacy of damages is great and the difficulties [of enforcing the decree] not extreme, specific performance will be granted, and the tendency in modern times has been increasingly towards granting relief where, under the peculiar circumstances of the case, damages are not an adequate remedy."Williston on Contracts, § 1423. "The jurisdiction does not depend upon the nature of the contract nor of the subject-matter, but it will be exercised wherever the legal remedy is inadequate." Pom. Eq. Jur. (3d ed.) § 1402. Specific performance, even more than most equitable remedies, is based directly on the inadequacy of the legal remedy. It is for this reason that agreements for the sale of land are the most common subjects of decrees for enforcement. "The inadequacy *Page 465 
of the legal remedy, by compensation in damages, is generally regarded as conspicuous in cases of agreements for the sale and purchase of real estate, each parcel of which differs in some respects from others. Such property is usually bought because it possesses some feature which attracts by personal gratification and determines the purchaser to make some particular use of it."O'Connor v. Tyrrell, 53 N.J. Eq. 15.
In cases involving building and construction contracts, the court usually weighs, on the one side, the difficulties of enforcing and supervising the execution of a decree, and on the other side of the balance, the importance of specific performance to complainant and the inadequacy of an action for damages. If the difficulties attendant upon enforcement are not impressive, and the actual performance of the contract seems of much moment to complainants, courts are apt to grant equitable relief. The court may decree performance of a contract for construction work on land of defendant when the difficulty of enforcing and supervising the execution of the decree is not great and the work is essential to the use of complainants' adjoining land, and damages are not an adequate remedy.
But no contract is specifically enforced unless it be certain in all its parts. Heller v. Sweeney, 100 N.J. Eq. 150. The decree should be so exact that a defendant may not be in doubt with respect to his duty under the decree; he should not be left to guess what is required of him by the court. Such a decree must be based upon an agreement between the parties proved by satisfactory evidence. The court will not supply missing terms and compel the defendant to do that which he had never agreed to perform. Therefore, if a complainant is unable to prove that defendant promised to perform certain and definite work, there can be no decree for performance. The contract under consideration, or at least the written portion thereof, is notably vague. But if the meaning of the agreement is explained and made certain by evidence of extrinsic circumstances, it may be enforced. The *Page 466 
deed describes the premises conveyed by reference to a certain map. From this map, it appears that complainants' lot fronts on Orchard street, a street fifty feet wide, running from Stein avenue on the north to Reservoir avenue on the south. Thus is made sufficiently certain the reference to Orchard street contained in the defendant's covenant. Orchard street was dedicated and accepted by the Borough of Wallington in 1901. It was then vacated in 1922 and a factory was erected just north of Reservoir avenue on ground which had been Orchard street. This factory was torn down some time prior to the date of the deed to complainants but parts of the foundation remained and still remain in the middle of Orchard street, especially some concrete piers extending several feet above the level of the ground. In April, 1926, defendant prepared the map already mentioned, on which is shown Orchard street, and submitted it to the borough council. By resolution adopted two days before complainants acquired the land, the council approved and accepted the map. Such approval is not construed as an acceptance of the street by the municipality. P.L. 1913 p. 119. In June, 1927, the council passed an ordinance establishing the grade of Orchard street. A water main has recently been laid along the street but otherwise the physical situation is the same as when complainants took title. The street may be traversed by pedestrians, but it is too rough and obstructed for ordinary vehicles to use it.
Complainants contend that the agreement to cut through a street known as Orchard street means to level the ground between Stein avenue and Reservoir avenue where Orchard street is shown on the map and to the width there shown, namely fifty feet, in order that the street may be usable by vehicles. The phrase "cut through a street" has no technical significance and no definite fixed meaning in common usage. But I think the circumstances disclose that the words were used by the parties in the sense for which complainants contend. They certainly did not mean that defendant would dedicate the street, for this had already been done. Nor can *Page 467 
the agreement by defendant to cut through be construed as an agreement that the borough would accept the dedication. What then could have been intended except the physical improvement of the street, the cutting away of obstructions and the filling of hollows? This was what defendant, by its covenant, agreed to do. Defendant is not required to level the street in front of complainants' property only. Orchard street is the only public highway which touches their lot and the obvious purpose of the covenant was to make the lot accessible. The improvement must extend from Stein avenue to Reservoir avenue. The contract does not indicate that merely a strip of sufficient width to permit the passage of a car should be improved, and so the grading must extend the whole width of the street as shown on the map. Complainants urge that the leveling should be to the grade established by the borough in June, 1927. Of course, the parties could have agreed in 1926 that the street should be worked to the grade thereafter to be established by the municipality, but there is no evidence that such was the contract. Defendant will have fulfilled its obligation when it works the street to a reasonably usable grade.
The agreement to lay sidewalks in front of the premises means, I take it, to lay sidewalks of the width and character which prevailed in the neighborhood in front of similar properties at the time the contract was executed. I do not recall that any evidence was presented on this point, but if the parties cannot agree, I will permit further evidence to be presented on the matter of sidewalks.
The contract as defined by the situation which existed when it was executed, is no more indefinite than those which were enforced in Gregory v. Ingwersen, supra; Williams v. Lowe,supra, and Storer v. Great Western Railway Co., 2 Y. C.C.C.52; 63 Eng. Rep. 21; 6 Eng. R.C. 59. In the last, defendant, in order to permit passage under its railway to and from plaintiff's land, had agreed to construct a neat archway sufficient to permit a loaded carriage of hay to pass, and had agreed to complete the approaches of the archway. That was all. *Page 468 
The importance of performance to complainants and the inadequacy of damages, are apparent. I cannot assume that complainants have sufficient funds to improve Orchard street, and even if they are able to do so, an adequate remedy is not thereby indicated. The fee under the street belongs to defendant and not to complainants. The improvement of the street would not only benefit complainants' lot but would be equally valuable to the owners of all the lots abutting the street. Whether, after spending their money for this improvement, complainants could recover from defendant for the expense, is doubtful; there is no evidence concerning the financial standing of defendant. The failure of defendant to make usable Orchard street, deprives complainants of the enjoyment of the land which they have purchased on the faith of defendant's agreement. They cannot even build on it because building materials cannot be drawn to the spot. A breach of contract which deprives one of the use of his land, is a breach which cannot be adequately compensated by a judgment for damages.
The difficulty of supervising and enforcing a decree for performance is not formidable. The work requires no particular technical skill and can be completed in a couple of weeks.
Defendant urges that relief should be denied because of complainants' laches. Defendant was required by the contract to complete the work within one year, or by May 12th, 1927. The bill of complaint was not filed until November 10th, 1930, but it appears that in the meanwhile defendant was continually promising complainants that it would perform. Furthermore, there is no suggestion that defendant has been injured by the delay. The defense of laches cannot prevail. Performance of the contract will be decreed. *Page 469