FIEDLER, INC., a corporation of New Jersey, and MARTHA
W. FIEDLER, complainants,

*v.*

COAST FINANCE COMPANY, INC., a corporation of New Jersey,
defendant.

[Argued October 23d, 1940.   Decided February 13th, 1941.]

*Messrs. Lindabury, Steelman, Zink & Lafferty (James L. R. Lafferty,* of counsel), for the complainants.

*Mr. Edward R. McGlynn,* for the defendant.

The opinion of the court was delivered by

BROGAN, CHIEF-JUSTICE.

The decree under appeal dismissed a bill of complaint, the principal object of which was to compel specific performance of a contract entered into by the corporate defendant with the complainant, Fiedler, Inc.

The bill alleged that the complainant, a real estate development company, was by written contract, appointed the exclusive agent of the defendant to develop and sell certain properties owned by it, located on the Manasquan river in this state. Martha W. Fiedler, a mortgagee, appears as a complainant, her interest arising out of two mortgages given her by Fiedler, Inc., to secure construction loans on two houses. Under the agreement between the parties to the contract it became the duty of the defendant to lay out a plan for development of the tract into lots; to lay out and dedicate streets, parks and recreational areas, and to supply a water system. A limited section was set aside for the initial development. It was agreed that the defendant-owner would prepare a map for that portion of the tract selected for the initial development, depicting the development of the premises and showing a state of improvement required by the Federal Housing Administration, a federal corporate agency, in a manner

acceptable to that agency, so that the land and premises, when developed, "would be eligible for mortgages guaranteed by the Federal Housing Administration." Many additional detailed covenants were made by the parties which need not be recited here.

In consideration of the foregoing, Fiedler, Inc., undertook to promote and advertise the project at its own expense and to erect, before a given date, one house on each of six certain lots selected by the complainant. The plan generally was to sell the improved lots, the defendant to be paid forty per cent., the complainant to retain sixty per cent. of the purchase price as its commission—the lots to be sold to the public at prices fixed by the owner and in the event of dispute regarding the prices fixed arbitration was to determine the issue. Enough has been written concerning the agreement to indicate the kind of contract it was. The map was prepared by the defendant and submitted to the Federal Housing Administration (F. H. A.) which agency, according to the bill of complaint, informed defendant of its requirements before it would approve the development for F. H. A. financing. These requirements were that the map be revised, which was done; that the "final map" be recorded; that protective covenants be entered of record against the entire tract rather than imposed in individual deeds; that the right of way of interior streets be not less than fifty feet in width with a particular grade and specified pavement surface; that a municipal water service be installed with six-inch mains, as well as electricity, street lights, fire hydrants, &c.; that all streets projected through the tract be connected with an existing hard surface road; that the residential character of the neighborhood be established by the construction and "sale" of ten houses "closely grouped," to be evidenced by legitimate contracts of sale; that a satisfactory drainage plan be submitted; that the park and recreation centers be dedicated and accepted by the municipalities, in which the tract was located, for perpetual maintenance.

Only two of the initial six lots to be conveyed to complainant were conveyed and on these the complainant erected two houses—Martha Fiedler advanced the construction money

and was given mortgages. It is charged that the other four lots were not taken up by complainant because the defendant had fixed a selling price for same far beyond their value and that when the parties could not come to terms on price defendant refused to arbitrate; further, that the F. H. A. terms had not been accepted by defendant although it had agreed to accept them, but rather failed to comply with the requirements by not filing the map with the federal agency and with the county clerk; and by failing to install a water system, construct streets, &c.

It is also charged, and must be taken as true, that the houses built by complainant could not be sold because of lack of water supply, streets, &c., and that the excessive prices demanded for other lots by the defendant made it impossible for the corporate complainant to proceed with its covenant to sell such lots.

The prayer was for a mandatory injunction requiring defendant to file the map as per the F. H. A. requirement, to construct the streets and install the water supply and to satisfy the various other prerequisites laid down by the F. H. A.; also for an injunction to prohibit the defendant from authorizing any other person to develop and sell these lands; the court was also asked to fix the price of the lots and to decree that the lands were subject to the requirements outlined by the F. H. A.; and that a lien be imposed on said lands in favor of the complainants for an amount sufficient to cover the cost of installing a water system, laying out and dedicating streets, for the value of the services of Fiedler, Inc., and the amount it has expended in making improvements and for its damages for breach of the contract.

The learned Vice-Chancellor before whom the bill was challenged struck it out on the ground that there was an adequate remedy at law; that a decree for specific performance of the contract could not well be enforced; and that in any event performance by the defendant was subject in large measure to the approval of the F. H. A. over which the court had no control.

On this appeal the appellants attack the decree on the ground that the common law remedy for damages is inade-

quate and that they are entitled to equitable relief; that there was no want of mutuality in the contract; that it was error to dismiss the bill until after an answer had been filed and proof taken; and that respondent had received substantial performance of the contract.

We think that the bill of complaint on its face does not entitle the complainants to the equitable relief sought but rather that the common law remedy for damages is entirely adequate. The appellants contend against the ability of the law court to fix damages in the usual mode, by saying that it is difficult to measure the loss that will be suffered unless the area be completely developed as contemplated by the contract; that to fix the damages it would be necessary to ascertain the value of the tract after the houses had been completely built and sold; and that the reputation of Fiedler, Inc., because of engaging in an unsuccessful real estate venture, will be seriously impaired. But all of these elements of damage can be proved by the parties in interest, or by expert witnesses, with as much accuracy as any unliquidated claim can be ascertained. The amount of money expended may be precisely determined; the value of the services and future loss of profits can be estimated. These questions are for a jury. *Wolcott, Johnson & Co.* v. *Mount, 36 N. J. Law 262; 17 C. J. 756.*

Certain cases are cited to support appellant's contention that it is entitled to the equitable relief sought. One is an English decision, *Wilson* v. *Furness Railway Co., L. R. 9 Eq. 28.* But that case differs from this in that the party there seeking specific performance had completely performed his part of the contract. A Massachusetts case, *Jones* v. *Parker, 163 Mass. 564; 40 N. E. Rep. 1044,* compelled specific performance of a contract by a landlord to supply a reasonable amount of heat and light and to install certain machinery. This seems to have been an extreme case and perhaps was justified under the facts. The rule in our own state is not as extreme as that laid down in the *Jones Case, supra,* and the holding of the court in that case has not been immune from criticism. *Cf. 5 Pom. Eq. Jur. (4th ed.) 4895 note 76.* Nor is the case of *Zygmunt* v. *Avenue Realty Co.,*

*Inc., 108 N. J. Eq. 462,* helpful to the appellants. There the court found as a fact that the complainant's damages would be inadequate and it was such a breach of contract as deprived the complainants of the use of their land. It was also pointed out in that case that the work in question required no particular skill, could be quickly done, and that the difficulty of supervising the decree and enforcing it was not formidable. Here the fact situation is totally different. The difficulty of enforcing a decree in this case, if decree were entered for the complainants, is apparent from a mere perusal of the bill. The other cases cited by the appellants are all distinguishable on the facts.

The argument that the court erred in dismissing the bill without taking proofs requires no discussion. The undertakings of each party appeared in the bill. They are many and varied in character. The difficulty in supervision that would be necessary is obvious.

It is next said that there was no want of mutuality to warrant the denial of the relief sought. The general rule is that specific performance is decreed only where there is mutuality. *Richards* v. *Green, 23 N. J. Eq. 536, 537; Woodruff* v. *Woodruff, 44 N. J. Eq. 349, 355;* compare *Cavanna* v. *Brooks, 97 N. J. Eq. 329, 332* and *333; Ten Eyck* v. *Manning, 52 N. J. Eq. 47, 49; Public Service Corp.* v. *Hackensack Meadows Co., 72 N. J. Eq. 285, 287,* cited for the principle by this court in *Degheri* v. *Carobine, 102 N. J. Eq. 264, 269; Teilleman* v. *Porter Smith Co., 103 N. J. Eq. 412, 415; Freeman* v. *Anders, 103 N. J. Eq. 430, 433; Reed* v. *Reed, 169 Atl. Rep. 798; 4 Pom. Eq. Jur. (4th ed.) 3331 § 1405; 25 R. C. L. 232 § 33.* It is no simple matter to outline with precision just when there may be mutual enforcement of a contract. Under our cases and those of other jurisdictions the term "mutuality of contract" is often a misnomer since the time when the test is applied is the time when the remedy for breach is sought *(5 Pom. Eq. Jur. (4th ed.) 4922 § 2191; Pom. Eq. Rem. § 769)* or "at the time of rendering the decree," *Richards* v. *Green, supra.* The test seems to be whether the remedy is mutual as well as the obligation. *Ten Eyck* v. *Manning, supra.* If the enforcement of the

obligation may not be granted to both contracting parties, it should not be enforced against one party.

It is also a maxim of equity that contracts which, as here, call for personal services to be performed will not be specifically enforced. And this is true even though as here the appellant says it is willing to give personal service, because in the event that it did not it could not be compelled to do so and the mutual remedy which should be available to both would not be available to the respondent. Under such circumstances equity will not require the respondent specifically to perform its agreement at appellants' behest. *5 Pom. Eq. Jur. (4th ed.) 4894 § 2181; 25 R. C. L. 303 § 117; p. 305 § 118; 58 C. J. 1056 § 300.* (There is an exception to this general rule, not apt here, *i. e.,* where the party to perform the personal services seeks the remedy having himself fully performed and removed or remedied the lack of mutuality. *5 Pom. Eq. Jur. (4th ed.) 4927 § 2193.*)

Here it is also obvious that there has been but a minor performance on the complainant's part. The bill of complaint, on its face, indicates that there has not been a substantial performance by the complainant. Indeed there could not have been under the facts alleged by it, for its personal services were to be performed as the work or development progressed, while its complaint is that respondent retarded and refused to carry out the development.

Appellants also rely upon the case of *Madison Athletic Association* v. *Brittin, 60 N. J. Eq. 160.* In that case the complainant sought specific performance of an option to purchase lands leased from the defendants' testator the option containing a condition that complainant should erect a building to cost not less than $6,000. Among the questions considered was whether mutuality of remedy was lacking in that, as defendants contended, they could not specifically enforce the building covenant against complainant. In decreeing specific performance of the option-agreement to convey the lands to complainant, Vice-Chancellor Emery held that the main object of the option was the conveyance of land for an agreed price with the covenant to build "intended by the parties to be carried out after the conveyance of title;" that

it was a common practice in the sale of lands to include in the conveyance such or similar covenants to build or otherwise improve lands; and that the question as to the defendants' rights, upon breach of the covenant to build, "must be left for determination hereafter, if occasion arises." The decree was not appealed to this court. This case, like the *Jones Case* (Mass.), seems to be the extreme to which specific performance has been made to apply.

It is apparent that the instant case differs considerably from the *Brittin Case*. The contract under consideration was not one for the purchase of lands; merely for an agency therein. While it is true title to the lots was to be conveyed to the appellant from time to time as the development advanced, its ownership was merely to facilitate the selling plan; it was to act as a conduit for title to pass from the defendant to the ultimate purchaser as an incident of the agency. That this is so is clear from the allegations of the bill. Appellant was not to pay for the lots—it was to take title to them piecemeal and when the lots were sold to the public render forty per cent. of the selling price to respondent, out of the money received from the purchaser. Furthermore, and most important, in the *Brittin Case, supra,* the principal consideration for the conveyance to the complainant was payment of money which could be decreed by the court and enforced by process or as a condition for defendant's delivery of title; the building covenant was a matter of secondary importance, merely incidental to the agreement to sell. But here there is a contract calling for personal service by the appellant which, as pointed out above, renders the contract unenforceable by specific performance for lack of mutuality.

But assuming for the sake of argument that the contract was one which could otherwise be specifically enforced, the question arises whether the respondent could obey the decree. The contract required the respondent to get the approval of the F. H. A. as to maps, street construction, parks, recreation area, grade, width of street, water supply, and what-not. A decree compelling a specific performance of this contract and embodying the covenants imposed by the contract upon

the respondent, a compliance with which manifestly rests in the will or discretion of a third party uncontrolled by the respondent, would be a vain decree, one which in truth and in fact the respondent would find it impossible to obey. Decrees that would in the final result be nugatory should not be made. *4 Pom. Eq. Jur. (4th ed.) 3334 § 1405.* There was no jurisdiction over the federal agency in question, it has not been made a party; nor could this court control the discretion of that agency even if it were "in court." For these reasons the decree under review should be affirmed.

*For affirmance*—The Chief-Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Dear, Wells, WolfsKeil, Rafferty, Hague, JJ. 13.

*For reversal*—None.