[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 367 
At the pre-trial conference the question arose whether this alleged cause of action formerly instituted in the Court of Chancery should be heard by the Chancery Division or tried by a jury in the Law Division of this court.
Summarily stated, the plaintiff, a lessee in possession prays for a judgment commanding the defendants as lessors specifically to perform a covenant to make alterations and improvements in the building situate on the demised premises.
It is suggested by counsel for the defendants that the plaintiff in view of the circumstances has mistaken its remedy and that the pleadings should be appropriately amended to enable the plaintiff to seek recovery of compensatory damages at *Page 368 
law. Moreover, he represents orally that a judgment of specific performance, if rendered, would be vain since the defendants do not have the capital with which to finance the required work.
It may be said with reasonable certainty that courts of equity jurisdiction will not ordinarily undertake to enforce the performance of so-called building and construction contracts. The general policy inheres in the circumstance that in most instances damages at law constitute an available and adequate remedy and, additionally, in the practical inability of the court to compose a judgment or decree embracing with requisite precision the specifications of the work and to engage in the supervision of its performance.
However, not unlike many general rules and policies, there are exceptions. To identify the exceptions reference in our jurisdiction is usually made to the decision of Vice-Chancellor Leaming in Atlantic Suburban Ry. Co. v. Atlantic Freeholders,84 N.J. Eq. 618, 94 Atl. 602, where the concurrent elements essential to create the exception are defined as follows: "1. In each case, the building was to be done upon the land of the person who agreed to do it. 2. The consideration for the agreement, in every instance, was the sale or conveyance of the land on which the building was to be erected; and the plaintiff had already, by such conveyance on his part, executed the contract. 3. In all of them, the building was in some way essential to the use or contributory to the value of adjoining land belonging to the plaintiff."
Here the plaintiff is in possession of the premises in the enjoyment of its leasehold estate. It has long been the general rule that Chancery will not assume to compel a defendant specifically to perform a contract to build, construct, or repair a building situate upon the plaintiff's land or upon land over which the plaintiff maintains legal control. 164 A.L.R. 804, 807.
It may be proposed that the general rules to which reference is made have been subjected to additional exceptions by the adjudications of more recent date. Whether such adjudications should be characterized as modifications or exceptions, or regarded *Page 369 
as cases significantly divergent and distinguishable in nature remains at most debatable. Cf. Zygmunt v. Avenue Realty Co.,108 N.J. Eq. 462, 155 Atl. 544; Fiedler, Inc. v. CoastFinance Co., Inc., 129 N.J. Eq. 161, 18 Atl. (2d) 268.
I peruse the complaint and its amended schedules and exhibits to ascertain the nature and extent of the construction work, the performance of which the court is requested to enforce. Whether plans and specifications prepared by a registered architect have been approved by the parties and signed by them as contemplated by the terms of paragraph 28 of the lease is not made evident. Observable, however, is "Exhibit II," a supplemental agreement which is perhaps sufficiently expository of the general character of work. I quote from it:
"1. That in addition to the work to be done by the landlord as set forth in the plans made by HARRY G. BACK, architect, which has been initialed by the parties this day, the landlord agrees to do the following:
"(a) to remove the existing seven (7) windows on the main floor of the two (2) buildings 48 to 52 Church Street, New Brunswick, N.J. and to replace them with three (3) large windows, according to plan,
"(b) to extend and enlarge the main floor by approximately eighteen (18) feet in the depth,
"(d) to repair the floor on the main floor so as to match the existing floor,
"(e) to match incomplete or barren portions of the ceiling of the main floor to match the existing ceiling, as near as possible,
"(f) to remove partition brick wall on main floor and to erect iron girders and columns thereat so as to carry the weight of the wall thereat,
"(h) to remove the two light columns on the main floor and to replace the same with one heavier and larger column so as to carry weight of roof and wall,
"(i) to remove the stairs now contained in premises 52 Church Street,
"(j) to extend the floors on the 2nd and 3rd floors of the premises to the corresponding floors of buildings 48-50 Church Street. The entire floor of the 2nd floor as extended to be of new flooring complete throughout,
"(k) to remove the partitions on second and third floors of No. 52 Church Street and replace the same with wooden beams so as to support adequately the weight of the roof and floors,
"(1) to construct one (1) entrance on each floor for all the buildings (48 to 52 Church Street), *Page 370 
"(m) to remove existing window in building 52 Church Street and replace with large windows to match windows in buildings No. 48 to 50 Church Street,
"(n) to lower the steps and extend the stairway in buildings No. 48 to 50 Church Street, so as to accommodate ingress and egress of furniture.
"2. The landlord expressly agrees to paint or paper the 2nd and 3rd floors of building No. 52 Church Street, to suit the tenant.
"3. The landlord further expressly agrees to furnish and install porcelain enameled steel or black glass at tenant's election, on the face of the building as indicated on the plan and on the base of the windows and on the columns.
"4. The landlord expressly agrees that all the floors of the leased premises are to be level and in good condition."
Paragraph 4 of the complaint invites attention to the attached "Exhibit III" which specifies "but not limited thereto" the respects in which the defendants have failed to obey the covenants to remodel the building. Again I quote:
"(1) New and existing floor not properly matched.
"(2) New and old ceiling not properly matched.
"(3) First floor columns not properly replaced.
"(4) Second and third floor flooring incomplete.
"(5) Stairway between 48 Church Street and 50 Church Street improperly done.
"(6) Ceiling in vestibule cracked and peeling off.
"(7) Floor in vestibule rough and uneven.
"(8) Many baseboards omitted, those installed not matched to existing ones.
"(9) Floors throughout premises not level or in good condition.
"(10) Premises not delivered broom clean, much rubbage and useless debris remaining on premises.
"(11) Heating system not properly repaired as agreed; repairs to same made by complainant at its expense.
"(12) Third and fourth floors never finished for occupancy.
"(13) Entire work done by patch-work methods with inferior methods, without proper finish, and of general poor quality, contrary to and below standards specified."
It must, I think, be conceded that the items of renovation and construction work are numerous, and noticeably diversified. Moreover by their nature they are such as to render their actual performance and accomplishment provocative of frequent disputes. "The difficulty in supervision that *Page 371 
would be necessary is obvious." Fiedler, Inc. v. Coast FinanceCo., Inc., supra.
The term of the tenancy extends to April 30, 1956. The annual rental is $4,950 payable in monthly instalments. The plaintiff has accepted possession notwithstanding the alleged breach of the lease by the landlord. It seems quite possible for the plaintiff to establish at law its consequential damages by proceeding to acquire the improvements initially at its own cost. If the breach of the covenant and its resultant loss are thus established, the liability will fall upon the defendant-lessors. It is not manifest that such a remedy will be inadequate. 5 Williston onContracts (Rev. ed. 1937) 3913, § 1404: 32 Am. Jur. 592, §§ 717, et seq.
It is to be acknowledged that the presentation of this subject to me in this manner is somewhat informal, but counsel have recommended it to be expedient, and the authority for the judicial action here taken seems to be within the circumference of Rule 3:40-3.
The complaint will not be dismissed. An order will be entered authorizing the desirable and appropriate amendments of the pleadings and the transfer of the action to the Law Division for trial.