**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1831-19

PAUL OLIVEIRA and
ADRIANA OLIVEIRA,

     Plaintiffs-Appellants,

v.

NJ ASPHALT SERVICES and
HENRY COOPER,

     Defendants-Respondents.

_____

          Submitted October 7, 2020 – Decided February 10, 2021

          Before Judges Ostrer and Enright.

          On appeal from the Superior Court of New Jersey, Law
          Division, Warren County, Docket No. DC-001863-19.

          Paul Oliveira and Adriana Oliveira, appellants pro se.

          Respondents have not filed a brief.

PER CURIAM

     Plaintiffs Paul and Adriana Oliveira appeal from what they consider an

inadequate verdict in their Special Civil Part lawsuit over a defective driveway

paving job by defendant NJ Asphalt Services, LLC (Asphalt Services). We reverse and remand for a new trial.

We do so for several reasons. The trial court inappropriately overlooked or undervalued crucial evidence describing the scope of Asphalt Services' breach; the court sua sponte barred the Oliveiras' proof of monetary damage; and the court did not afford the Oliveiras an opportunity to cross-examine Henry Cooper, Asphalt Services' owner, regarding his damage estimate.[1]

The sole trial witnesses were the Oliveiras and Mr. Cooper. Under the parties' one-page contract, the Oliveiras agreed to pay Asphalt Services $12,500 to pave their driveway (which, according to Mr. Cooper's testimony, was 6,700 square feet) with two to three inches of machine-laid, power-rolled asphalt. Asphalt Services promised to dig out grass and provide a stone base, fine grading, and a tack coating.

After paying the full amount due, the Oliveiras complained to Mr. Cooper that the work was defective. Mr. Cooper agreed that the asphalt was "too thin" in one area, and that the Oliveiras "ha[d] a legitimate complaint" concerning that

---

[1] The court dismissed the Oliveiras' claim against Mr. Cooper as an individual. They do not appeal from that aspect of the court's decision.

area.  But he rejected the Oliveiras' complaints of other defects.  After the parties could not resolve their differences, the Oliveiras sued.

At trial, the court conducted the direct examination of the Oliveiras, who appeared pro se, and of Mr. Cooper, who represented himself and his LLC.[2]  Mr. Oliveira testified that the driveway had only one inch of asphalt "in a lot of spots."  He also identified other defects in the work, illustrated by photographs that he had taken about a week after Asphalt Services completed the work.  Specifically, Mr. Oliveira identified cracks in the pavement; a "bad joint" where the pavement was "not rolled properly" and two areas did not meet correctly; a puddle in front of the garage;[3] "popcorned" pavement that was "not rolled, not sealed"; a hole "in the middle of the driveway"; and a "three-inch lip" where the driveway met the road.  Ms. Oliveira also testified that the "whole driveway is full of holes."[4]

---

[2]  Because this trial occurred in the Special Civil Part, but not the Small Claims Section, the trial court erred in permitting Mr. Cooper to defend on behalf of his LLC.  See R. 1:21–1(c); R. 6:11.

[3]  We note that the contract stated:  "Not guaranteed against puddles due to level grades."

[4]  The Oliveiras evidently brought more photos to the trial, but the judge directed Mr. Oliveira to "pick out the best ones."

A-1831-19

Mr. Oliveira asked the court to award monetary damages or to order Asphalt Services to lay down more asphalt in the problematic areas. The court responded that it could only award money damages. Mr. Oliveira, attempting to quantify those damages, stated that another contractor had provided him an estimate for "re-do[ing] the job": $15,000. Sua sponte, the court excluded the written estimate, stating, "that's a hearsay document. I . . . can't cross-examine the person who made that."

The court did not offer Mr. Cooper an opportunity to cross-examine the Oliveiras after their testimony.

On direct examination, Mr. Cooper testified that, prior to the lawsuit, he offered to add asphalt to a limited area of the driveway that lacked the specified thickness. But he refused the Oliveiras' requests for more extensive repairs. Mr. Cooper did not specifically address the other defects that the Oliveiras alleged at trial.

The judge asked Mr. Cooper how much a third party would charge to make repairs. Mr. Cooper responded that $4,000 was at the high end of what would be reasonable for "the one area in question that is not thick enough." He admitted the area also "ha[d] popcorn areas, meaning it's porous," but he

4

maintained that "[a]ll the main issues are in one particular area," and that except for that area, his company had performed in a workmanlike fashion.

Without offering the Oliveiras an opportunity to cross-examine Mr. Cooper or to offer rebuttal, the court characterized plaintiffs' claim as one solely for damages. On the one hand, the court stated, plaintiffs were "unable to produce any dollar estimates as to . . . the cost of repairing" the driveway. On the other hand, "the defendant . . . indicate[d] that the portion of the work which could be re-done, that is the thin layer of the driveway, less than three inches, would cost approximately $4,000." The court then adopted $4,000 as the measure of plaintiffs' damages and entered judgment for the amount plus costs.

This appeal followed.

We consider first the court's finding regarding the scope of defendant's breach. In a non-jury case, we exercise limited review of a trial court's fact-findings, which we generally must accept when "adequate, substantial, credible evidence" supports them. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 411–12 (1998)). And "[d]eference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare, 154 N.J. at 412). However, an appellate court may disturb a trial court's fact-findings that rest on

an "obvious overlooking or underevaluation of crucial evidence." State v. Johnson, 42 N.J. 146, 162 (1964).

As noted, Mr. Cooper admitted that he breached the contract by applying less than the promised two-to-three inches of asphalt on one portion of the driveway. However, the Oliveiras testified that there were additional flaws from one end of the driveway (a puddle by the garage) to the other (a three-inch lip by the road), including a bad joint, an unsealed area, "a lot of spots" with one inch of asphalt, and multiple holes. They presented photographic corroboration of most of these defects. Yet, without addressing the Oliveiras' proof, the court concluded that the only breach pertained to the thin layer in one area. This "overlooking or underevaluation of crucial evidence" warrants a remand to reconsider the extent of the breach.

We turn next to the issue of relief. The Oliveiras challenge the court's decision to disregard an estimate, which they obtained and brought to the trial, for redoing the driveway. "[W]e generously review a trial court's evidentiary rulings." Manata v. Pereira, 436 N.J. Super. 330, 343 (App. Div. 2014). If offered to establish that $15,000 was the reasonable cost of repairing the defects in Asphalt Services' workmanship, the estimate was no doubt hearsay. See N.J.R.E. 801(c) (defining hearsay). However, it conceivably may have been

admissible as a business record, if the author prepared the document in the regular course of its business, contemporaneously with its estimate, and not for litigation; the business regularly made such estimates; and the "method, purpose or circumstances of preparation" did not indicate it was "not trustworthy." See N.J.R.E. 803(c)(6) (defining the exception for records of regularly-conducted activity); see United States v. Pfeiffer, 539 F.2d 668, 670–71 (8th Cir. 1976) (finding that invoices qualified as business records).

The record does not indicate that the court examined the document to assess whether it fit the prerequisites of the exception and was not otherwise untrustworthy. Nor did the court question Mr. Oliveira to ascertain whether he could lay a foundation for admitting the document into evidence. Rather, the court immediately barred introduction of the estimate. Based on those omissions, the court's evidentiary determination does not command our deference. See E & H Steel Corp. v. PSEG Fossil, LLC, 455 N.J. Super. 12, 25 (App. Div. 2018) ("[N]o deference is accorded when the court fails to properly analyze the admissibility of the proffered evidence.").

Although the Oliveiras do not expressly complain that the court failed to afford them an opportunity to cross-examine Mr. Cooper, they contend that the court unduly credited Mr. Cooper's assessment of the nature of the defects and

the appropriate quantum of damages. That contention implicates their right to cross-examine.

Although the court "in a pro se trial . . . often has to focus the testimony and take over the questioning of the parties and witnesses," the court is obliged to inform the parties of their right to cross-examine, and the failure to do so deprives them of their procedural rights. See Franklin v. Sloskey, 385 N.J. Super. 534, 543 (App. Div. 2006); Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005). Had the court invited the Oliveiras to cross-examine Mr. Cooper, they might have demonstrated that the scope of the breach and the measure of damages were greater than Mr. Cooper claimed.

Finally, although the Oliveiras do not raise the issue of specific performance, we briefly address it, in case they wish to pursue it on remand. We acknowledge that, as a "general rule," a court of equity will not order specific performance of a construction contract. Lester's Home Furnishers, Inc. v. Mod. Furniture Co., 1 N.J. Super. 365, 368 (Ch. Div. 1948). But that rule is rooted in the court's disinclination to award relief that would entail extensive court supervision, see William A. Dreier et al., Guidebook to Chancery Practice in New Jersey, § II.G (2018); Fleischer v. James Drug Stores, Inc., 1 N.J. 138, 148 (1948) (stating that equity may decline to act where "specific performance

would entail continuing and constant superintendence over a considerable period of time"), and is subject to exceptions and limitations, Lester's Home Furnishers, 1 N.J. Super at 368.  Thus, where damages are inadequate or inefficient and the court's supervisory responsibility is not great, specific performance may be appropriate.  Cf. 25 Williston on Contracts § 67:100 (4th ed. 2020) (stating that "the tendency has been increasingly toward granting" specific performance of construction contracts "where the inadequacy of damages is great, and the difficulties of supervision not extreme").

In this case, a court could find that compelling Asphalt Services to repair the inadequately-finished areas would be far more efficient than awarding damages equal to the cost of third-party repairs.  We do not minimize the expertise required to pave a driveway properly; however, the court may determine that specific performance, in this scenario (as opposed to, for example, a whole building-construction project), needs no extensive supervision.

Finally, because the judge who initially decided this matter made credibility determinations, we are constrained to direct that the remand be assigned to a different judge.  See R.L. v. Voytac, 199 N.J. 285, 306 (2009).

Reversed and remanded for a new trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1831-19