63 N.J. Super. 384 (1960)
164 A.2d 785
DOVER SHOPPING CENTER, INCORPORATED, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CUSHMAN'S SONS, INC., A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1960.
Decided October 17, 1960.
*386 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. David Young, 3rd, argued the cause for appellant (Messrs. Young & Sears, attorneys).
*387 Mr. Joseph A. Weisman argued the cause for respondent (Messrs. Hannoch, Weisman, Myers, Stern & Besser, attorneys; Mr. Albert G. Besser and Mr. Joseph S. Seidel, of counsel).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a mandatory injunction of the Chancery Division, entered December 3, 1959, ordering it to reopen its retail bakery business at the store premises leased by it from plaintiff at No. 17 Bassett Highway, Dover, and to keep the store open for business during the hours and on the days required by paragraph Third of the lease, with a manager or salesperson in charge and a "Cushman's" sign on the outside of the premises. The court also dismissed defendant's counterclaim with prejudice and denied plaintiff's demand for money damages, the same having been withdrawn by plaintiff in open court. A stay of the injunction, granted by the Chancery Division on December 21, 1959, was vacated by this court on March 16, 1960.
On July 16, 1956 the parties entered into a written lease for one of a group of stores in plaintiff's shopping center in Dover which defendant undertook to operate as a retail bakery. The lease, a detailed and comprehensive instrument of some 29 pages, resulted from protracted negotiations between the parties during which defendant was represented by counsel. The printed form, as finally executed, contained numerous typewritten insertions and changes, obviously the result of those negotiations. Among its provisions was paragraph Third:
"Third: As one of the inducements for the making of this lease Tenant hereby agrees, beginning as soon after the commencement of the term as is reasonably possible and continuing during the full remaining term of this lease, to operate its business in the demised premises; to keep its store open daily for the regular conduct of its business therein during the same hours at least as are customarily employed by other similar stores in the neighborhood of the demised premises, and to keep and maintain the show window displays in *388 an attractive and dignified manner: PROVIDED, HOWEVER, that Tenant shall be under no obligation to keep said store open on Sundays or holidays, or on days when it is customary for other stores in Dover, New Jersey, to keep closed, or when it is recognized business practice to keep closed. Tenant hereby agrees to join with the other tenants in the shopping center in any endeavor to formulate a common plan of store hours and business days; and if Tenant and said other tenants shall arrange such common plan, then the store hours and business days of Tenant's store on the demised premises, in lieu of the store hours and business days hereinabove set forth in this Article, shall be those prescribed by said common plan during the continuance thereof. It is further agreed that no failure by Tenant to keep said store open for business by reason of the elements, fire, labor disturbances or other causes beyond the control of Tenant shall be deemed a breach by Tenant of the terms of this Article."
The lease provided for a minimum annual rental of $7,000 plus a shifting percentage of gross sales in excess of the minimum rent.
Defendant took possession and began business on September 25, 1957, and has continued to pay the minimum rental down to the present time. Operations were discontinued about April 4, 1959, when defendant posted a window sign indicating that the store was closed for alterations. Several telephone calls between plaintiff and defendant, and correspondence during April 1959, confirmed that the ostensible reason for defendant's shutdown was this remodeling. However, on May 1, 1959 defendant wrote plaintiff that it was permanently ceasing operations, indicating that it had found the enterprise unprofitable and had decided it would be less costly to pay the minimum rent than to resume operations.
Plaintiff subsequently instituted its action for a mandatory injunction directing defendant specifically to perform the covenants contained in paragraph Third of the lease. Defendant answered and by way of separate defenses contended, among other things, that (1) equity should not grant specific performance of a contract relating to personal services or requiring court supervision over a long period of time; (2) defendant had continued to pay its minimum rent down to date, but had not enjoyed sufficient business during its period of operation to April 1, 1959 so as to *389 be required to pay any additional rent over and above the minimum; (3) plaintiff had not suffered any substantial or irreparable injury and had an adequate remedy at law; (4) equity should not grant specific performance where the benefits to plaintiff from the store being open would be slight in comparison to the substantial injury sustained by defendant. Defendant also alleged that plaintiff was not entitled to the relief demanded because the lease was executed as a result of plaintiff's misrepresentations, upon which defendant relied in entering into the lease. These were spelled out in the counterclaim whereby defendant sought rescission of the lease because, it was alleged, plaintiff had falsely represented that the shopping center would be completed during 1957, a department store would be built and operating, all sidewalks would be completed immediately, a theatre would be installed and operating in 1957, and parking facilities for 2,000 cars would be constructed within a reasonable time.
The trial judge refused to permit parol evidence offered by defendant with respect to these representations, apparently on the ground that such evidence would contradict the express terms of paragraph Seventeenth of the lease, which provides:
"Seventeenth: Landlord has made no representations or promises with respect to the demised premises except as herein expressly set forth. This lease contains the entire agreement between the parties hereto; and any agreement hereafter made shall not operate to change, modify, terminate or discharge this lease in whole or in part unless such agreement is in writing and signed by the party sought to be charged therewith."
He also indicated that the representations on which defendant claimed it relied were nothing more than simple promises.
Defendant claims error because the representations were material, and it would not have executed the lease but for them. It argues that the parol evidence was permissible to prove fraud notwithstanding paragraph Seventeenth.
*390 There can be no question that parol evidence is admissible to establish that the execution of a contract was procured by fraud, notwithstanding a provision that no representations had been made except those set forth in the agreement. Guilder v. Boonton-Pine Brook-N.Y. Bus Co., 110 N.J.L. 103, 105-106 (E. & A. 1932); Tams v. Abrams, 120 N.J. Eq. 253, 258-259 (E. & A. 1936); 32 C.J.S., Evidence, § 979(a), p. 942 et seq. (1942). Fraud may always be shown by parol evidence, since no attempt is being made to alter, vary or contradict the integrated instrument, but only to show that it is not an unimpeachable document, i.e., that it is void or voidable. Harker v. McKissock, 12 N.J. 310, 323 (1953).
One of the theories advanced by plaintiff in support of the argument that fraud could not be shown by the proffered parol evidence is that it dealt with the subject matter of the lease itself  the alleged fraudulent representations were directly and specifically contradictory to the express terms of the written instrument. Winoka Village, Inc. v. Tate, 16 N.J. Super. 330 (App. Div. 1951), is cited in support. However, plaintiff produces only partial evidence of direct contradiction between the terms of the lease and the alleged representations. The mere fact that both in some degree related to the physical layout or improvement of the shopping center is not sufficient to bar evidence of fraud. The Winoka holding is a narrow one and should be confined to its facts. Conceivably, one of the alleged representations  the proposed 2,000-car parking lot  was contradicted within the Winoka rationale, since paragraph Thirty-fifth (h) provides that "Landlord represents that the parking area will have accommodations for not less than one thousand vehicles and will have a paved surface." But the other representations do not appear to be expressly contradicted by the writing, and therefore should be admissible unless barred on another ground.
There is such other ground, and although the trial court did not clearly rest its exclusion of the proffered evidence *391 upon that basis, we may do so in affirming its result. The rejected parol evidence related to representations as to future events, and so was inadmissible.
Legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity, with the intention that the other party rely on it, and he does so rely to his damage. In equitable fraud the second element (knowledge) is not necessary, but the other four are essential. A mere promise to do something in the future, subsequently unfulfilled, does not constitute actionable fraud. Anderson v. Modica, 4 N.J. 383, 391 (1950). It is a mere breach of contract for which an action for money damages may lie.
A promise to do something in the future, which the promisor never intended to keep when he made the promise, may satisfy the first element of fraud as a material misrepresentation of the promisor's state of mind at the time of the promise. Piechowski v. Matarese, 54 N.J. Super. 333, 345 (App. Div. 1959). The trial court gave defense counsel adequate opportunity to state fully his proffer of proof before rejecting it as violative of the parol evidence rule. Neither the proof proffered, nor indeed the pleadings, give any indication that there was a fraudulent misrepresentation of the promisor's state of mind at the time the representations were allegedly made. The proffer revealed nothing more than representations on plaintiff's part to do certain things in the future. Failure to keep such promises, even if made, would not, without more, constitute fraud. Accordingly, the parol evidence was properly excluded.
There is another reason why defendant cannot prevail. It is manifest that the proffered testimony was properly excluded and the counterclaim justifiably dismissed because of defendant's laches. Assuming the alleged representations were made, the evidence is uncontradicted that defendant regularly paid the minimum rent under the lease from October 1, 1957 through November 1959. It is also apparent *392 that defendant must have known by January 1958 that those representations would not be carried out, i.e., the shopping center completed by the date represented, namely, during 1957; a department store operating there; all sidewalks completed immediately; a theatre installed and operating in 1957, and parking facilities for 2,000 cars constructed within a reasonable time. Nevertheless, defendant elected to continue in possession and pay rent for some 24 months after its discovery of the alleged fraud. It did not close its store until April 1959, 16 months after it must have known of the alleged fraud which induced it to enter into the lease. This may be considered as the earliest possible date defendant showed any indication it did not consider the lease valid. But it did not affirmatively do so; when it wrote on May 1, 1959, the reason given for not reopening the store and choosing to pay the minimum rent was the unprofitable operation at the site.
When a party treats a contract as valid and subsisting, he has made an election which prevents him from later seeking its rescission. The power to elect between alternative and inconsistent choices may be destroyed by laches, as is the case when a party does not act promptly to avoid the contract after discovering the alleged fraud. 3 Williston on Contracts (rev. ed. 1936), § 683, p. 1970. There can be no question but that New Jersey follows this rule. Ajamian v. Schlanger, 20 N.J. Super. 246, 249 (App. Div. 1952), and authorities cited; Jones v. Gabrielan, 52 N.J. Super. 563, 576 (App. Div. 1958). (In Jones the rule is stated that delay in rescission of a contract is evidence of a waiver of the fraud and an election to treat the contract as valid. We note, however, that the rule is not strictly based upon waiver, but upon the doctrine of election. See Williston, above.)
Since it is clear from the proofs at the end of plaintiff's case that defendant was barred by laches from asserting fraud, and since defendant did not indicate in its offer of proof that it would show the contrary, the proffered *393 testimony was properly excluded and the defense and counterclaim held without merit as a matter of law.
Defendant next contends that plaintiff should have been denied relief since money damages would be adequate, and even if that were not so, a court of equity should not direct the performance of detailed provisions of a lease, such as here, because of the necessity of continued superintendence. In reply, plaintiff cites paragraph Ninth (3) of the lease, which provides that "In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Landlord shall have the right of injunction * * *." It argues that damages for the breach of a percentage lease arrangement are not readily measurable. Plaintiff also adduced proofs to show that the very nature of the shopping center as a cooperative enterprise, with each store's success dependent on the continued operation of the other stores, requires that defendant's bakery business be maintained in accordance with the lease for the benefit of all involved. Plaintiff further cites recent decisions showing a judicial tendency toward granting specific performance wherever feasible. It argues that the remedy is particularly feasible here because plaintiff has waived judicial superintendence and is willing to rely upon the defendant's self-interest in continuing to preserve its good reputation by conducting its business in a manner which would reflect credit upon its operations.
The mandatory injunction, as we have pointed out, does no more than require defendant to reopen and resume its retail bakery business, to display the name of "Cushman's" on the outside of the premises, to keep the store open as required by paragraph Third of the lease, and to maintain a manager or salesperson in charge.
Courts have recognized the uniqueness of a percentage lease and have generally implied therefrom an obligation on the part of the lessee to occupy the property and to use reasonable diligence in operating the business in a productive manner. Silverstein v. Keane, 19 N.J. 1, 12 (1955); *394 1 American Law of Property, § 3.66, p. 321 (1952). But the gravamen of the complaint here is not only the possible loss of additional income by way of a percentage of defendant's increased gross sales, but the difficulty in measuring the harm that would come from the withdrawal of one of the members of a semi-cooperative enterprise like a shopping center. Plaintiff's damages cannot therefore be accurately ascertained, and remedy by way of damages at law would be impractical and unsatisfactory. See 4 Pomeroy, Equity Jurisprudence (5th ed. 1941), §§ 1401-1403, p. 1033 et seq.
We turn to defendant's argument that relief should have been denied because of the necessity of continued superintendence on the part of the court. Equity will not ordinarily order specific performance where the duty to be enforced continues over a long period of time and is difficult of supervision. Pomeroy, above, § 1405, pp. 1048-1049. However, the modern tendency is to grant specific performance in the case of a clear breach, where the difficulties of enforcement are not great, particularly when compared with the inadequacy of damages at law. 5 Williston on Contracts (rev. ed. 1937), § 1423, p. 3977 et seq.; accord: 2 Restatement, Contracts, § 371, comment (a), p. 676 (1932); and see Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379 (E. & A. 1947); Zygmunt v. Avenue Realty Co., 108 N.J. Eq. 462 (Ch. 1931); Williams v. Lowe, 79 N.J. Eq. 173 (E. & A. 1911); Curtice Brothers' Co. v. Catts, 72 N.J. Eq. 831 (Ch. 1907). The duty here imposed is no more difficult of enforcement than that involved in Fleischer v. James Drug Stores, Inc., 1 N.J. 138 (1948), where specific performance was ordered of a continuing contract of indefinite duration for furtherance of a cooperative plan in purchases.
Price v. Herman, 81 N.Y.S.2d 361 (Sup. Ct. 1948), affirmed 275 App. Div. 675, 87 N.Y.S.2d 221 (App. Div. 1949), is distinguishable on its facts. There was no percentage lease or shopping center. Involved was a bakery *395 with ovens, where skill in the baking process was essential, and not a chain store retail outlet for the sale of its products.
The specific performance granted by the court was directed at certain covenants simple of performance and supervision. The judgment expressly provided that except as specifically set forth therein, the court would "make no direction with respect to the method of operating the defendant's business on the demised premises or to the quality of the products sold and services rendered by the defendant therein * * *."
Since the court was careful to limit its order, defendant's objection to it on the ground of required continued supervision is without persuasive force. The judgment as it stands is not so difficult of enforcement that it can be said the difficulties of supervision outweigh the importance of granting specific performance because of the inadequacy of the remedy of damages at law.
Affirmed.