Ambassador Foods Corporation, an Illinois Corporation, Plaintiff-Appellant, v. Montgomery Ward & Co., Inc., an Illinois Corporation, Defendant-Appellee.

**Gen. No. 49,220.**

First District, First Division.

September 9, 1963.

William S. Kleinman, of Chicago, for appellant.

Narcisse A. Brown and William F. McNally, of Chicago, for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

This is an interlocutory appeal from denial of plaintiff's motion for a temporary restraining order.

Defendant appeared in the trial court, but filed no pleading, so the case comes before us solely on the complaint. Under those circumstances, the facts properly pleaded will be considered as true.

The verified complaint consists of three counts: Count I in equity for injunction and other relief; Count II in law for damages of a half million dollars; and Count III the same as Count II with the addition of an allegation of malice. All three counts are based on the same allegations of fact.

The parties entered into an agreement on August 15, 1960, a copy of which is incorporated into the complaint.* Plaintiff was given the exclusive right to operate a concession for the sale of cookies, doughnuts, and the like, in defendant's store at Livonia, Michigan, for a five-year period ending August 31, 1965. Plaintiff agreed to pay defendant a commission equal to 15% of its total net receipts, but not less than $10,000 per year. Plaintiff was to turn over to defendant its daily gross receipts, and at the end of each week defendant was to return to plaintiff the balance remaining after payment of its commission and certain other sums including the compensation due to plaintiff's employees. Defendant also voluntarily withheld funds from time to time for the purpose of paying plaintiff's suppliers.

The complaint alleges the general conclusion of fact that plaintiff "has conducted [its] business in a proper, lawful and businesslike manner, within the pro-

---

* There are allegations in the complaint in reference to three other agreements between defendant and "Ambassador Popcorn Company." We consider those matters to be immaterial to the issues between the parties in this case.

visions of said contract, and is not in default or in violation thereof." On the other hand, it is asserted that defendant undertook a hostile course of conduct toward plaintiff for the purpose of embarrassing plaintiff financially and appropriating its business and equipment. This was done, allegedly, by withholding monies due plaintiff for periods of several months.

The heart of the complaint relates to a letter from defendant to plaintiff dated April 12, 1963, which also is incorporated by reference. Pursuant to this letter, which was mailed and received by plaintiff on April 15, defendant terminated plaintiff's business in defendant's Livonia store. The pertinent parts of the letter read as follows:

> Be advised that under Section 4(a) of the [license agreement of August 15, 1960] Ambassador Foods Corp. guarantees Montgomery Ward & Co., a certain minimum commission per contract year. As you know Wards' commission on net receipts from your Livonia concession during the contract year ending August 31, 1962, did not equal the guaranteed minimum and we have been attempting for some time to recover the deficiency from your organization. If we understand your letter of March 13, 1963 correctly, it is your position that some downward adjustment in the guaranteed amount is in order due to loss of selling space and sales never contemplated by our agreement and that we deduct some unspecified amount from current receipts to cover the deficiency. Neither request is acceptable to this company.

> In addition we have just been advised that garnishment proceedings, Case No. 3228158, have been commenced against Ambassador Foods Corp., in Common Pleas Court, Detroit, Michigan. This action requires that we hold certain proceeds

arising in connection with your Livonia concession.

In view of the foregoing, we hereby cancel and terminate the above described agreement effective as of midnight, April 13, 1963. This notice of termination is given pursuant to Section 11 of said License Agreement dated August 15, 1960, and you are hereby further notified that Wards shall avail itself of any and all rights or remedies occurring [sic] to it thereunder.

The contract terms as to termination rights alluded to in this letter provide:

> Should a voluntary or involuntary petition in bankruptcy be filed by or against Licensee; should a receiver be appointed for any of Licensee's business or property; *should Licensee fail to pay any of its obligations to any persons when due; should Licensee fail, for any reason, to perform any of the terms of this Agreement,* including failure to keep the concession open for business; or should Licensor for any reason, discontinue the operation of any store or stores specified in Section 2, Licensor may terminate this Agreement with respect to such store or stores forthwith by mailing notice to Licensee. (Emphasis supplied.)

The complaint does not deny the truth of the specific factual statements contained in defendant's letter but only raises a question as to their legal sufficiency to support the termination. It does this by alleging that "[n]othing contained in said letter warranted or justified the said action theretofore taken by said defendant in respect to the cessation of the operations of the plaintiff's business in Livonia, Michigan."

The complaint further alleges on information and belief that defendant's agents have urged plaintiff's

103

suppliers and other creditors to bring suit against plaintiff for outstanding bills, and have spread false rumors that plaintiff is unable to pay its debts.*

It is also alleged that defendant holds $5,000 of plaintiff's money "for which it has not accounted to the plaintiff for a long period of time," in violation of their contract.

The relief sought by Count I of the complaint is that defendant be enjoined and restrained from: interfering with plaintiff's business in defendant's stores; withholding money due to plaintiff; circulating false rumors about plaintiff's financial condition or urging others to bring suit against plaintiff; taking over the operation of plaintiff's business in defendant's stores; violating plaintiff's rights under its contract with defendant.

Since the complaint, which was filed on May 2, 1963, alleges that plaintiff's business at Livonia was actually terminated on April 13, 1963 in accordance with defendant's letter of notification, it can be seen that a restraining order to maintain the status quo would avail plaintiff nothing. Thus, while the prayer of the complaint (Count I) is for a restraining order, the essential character of the relief sought, relating, as it does, to a reinstatement of the contract between the parties, would more properly be described as a temporary decree for specific performance or a temporary mandatory injunction, and we shall so consider it. (28 Am Jur, Injunctions, §§ 17 and 86.)

There is a sound judicial skepticism concerning the need of a mandatory injunction even when its issuance is sought after a full hearing of the case. So

---

* It may be noted that these allegations are on information and belief, are thus conclusions, and for that reason alone would be insufficient to support the injunctive relief sought. (Hope v. Hope, 350 Ill App 190, 112 NE2d 495; Fox v. Fox Valley Trotting Club, Inc., 349 Ill App 132, 137, 110 NE2d 84.)

much more so is this true when the court is asked to make such drastic use of its powers preliminarily. We are dealing here with "an extraordinary remedial process which is not a matter of right, but may be granted only upon the exercise of sound judicial discretion *in cases of great necessity.*" (Egan v. Chicago, A. & E. R. Co., 19 Ill App2d 130, 136, 153 NE2d 286; Lyle v. City of Chicago, 357 Ill 41, 44, 191 NE 255.)

For a court to find that there exists the extreme urgency or "great necessity" justifying a mandatory injunction, the need for such relief must, indeed, be clearly established and free from doubt. See City of Chicago v. People's Gas Light & Coke Co., 170 Ill App 98, 109; Cleaning and Dyeing Plant Owners Ass'n v. Sterling Cleaners and Dyers, Inc., 278 Ill App 70, 79.

And so it is also with a decree for specific performance. The conditions under which such a decree will not be entered are discussed in 49 Am Jur, Specific Performance, § 70, page 85:

> As a general rule, courts of equity refuse to decree the specific performance of a contract where its provisions and stipulations are so multifarious and its obligations are so continuous as to make the effective enforcement of a decree impossible, or require constant and long-continued supervision by the court and further supplemental proceedings in order to enforce the defendant's compliance with the decree and his performance of the constantly recurring duties of the contract. This is particularly true where performance will extend over a considerable period of time and include a series of acts, as is the case of a building and construction contract. Equity does not undertake to enforce contracts which require the performance of varied and continuous acts, or the exercise of special skill, taste, and judgment, because the execution of the decree would require

105

such constant superintendence as to make judicial control a matter of extreme difficulty.

Without earlier termination the license agreement for the Livonia store would run until August 31, 1965, a period of two more years. It requires "the performance of varied and continuous acts." Plaintiff's advertising must be approved by defendant. The defendant has some control over the hiring of plaintiff's personnel, in that they must not hire "any employee who is of poor character or reputation or who cannot furnish satisfactory references." The concession must be operated in an "orderly, businesslike manner," in accordance with defendant's "general policies and standards" at "competitive" prices, and without creating any objectionable odors. Daily receipts must be deposited with defendant, and defendant must make weekly accountings, less commission and various other charges, to plaintiff.

The case, therefore, comes within the rule of Langson v. Goldberg, 298 Ill App 229, 18 NE2d 729, in which this court affirmed denial of a decree for specific performance, saying at page 234:

The rule applicable to an action of the character before us is that a contract which by its terms calls for a succession of acts, whose performance cannot be consummated by one transaction and which requires protracted supervision and direction, cannot be specifically enforced. Harley v. Sanitary Dist. of Chicago, 54 Ill App 337; Grape Creek Coal Co. v. Spellman, 39 Ill App 630; that equity, when it takes jurisdiction to enforce the specific performance of a contract will enforce it in all its parts, and will not undertake such enforcement where the contract calls for a succession of acts whose performance cannot be consummated by one transaction, and which requires

protracted supervision. Hernreich v. Lidberg, 105 Ill App 495.

Again, it should be remembered, we are here concerned not with relief after full hearing, but on a temporary, preliminary basis which presents an a fortiori situation.

Furthermore, from the allegations of the equity count of the complaint, it is apparent that to have given plaintiff any meaningful relief the chancellor would have been required to direct the undoing of acts already fully accomplished.* This he should not have done under the circumstances, as it would not have been a proper exercise of his injunctive authority. (Theus v. Young, 321 Ill App 367, 373, 53 NE2d 298; John Deere Co. of Moline v. Hinrichs, 36 Ill App2d 255, 269, 183 NE2d 309.)

It is also alleged in the complaint, and argued here by plaintiff, that the termination of its contract with defendant would result in a forfeiture of machinery and equipment which it had installed in defendant's store at a cost of $40,000; that equity abhors a forfeiture and will grant relief from its consequences. This principle of equity is unobjectionable, but inappropriate to the case at bar because the contract of the parties not only permits, but, in fact, requires plaintiff to remove its property from the premises. In consequence, there is no forfeiture involved in this case.

Our conclusion is that the chancellor did not err in denying plaintiff's motion for temporary relief. A wide measure of discretion must be allowed to the trial court in matters such as this and we cannot say that this discretion has been abused. (English v. Abata,

---

* It will be recalled that this suit was started almost three weeks after defendant had caused the closing of plaintiff's Livonia business.

26 Ill App2d 428, 168 NE2d 561; Simpkins v. Maras, 17 Ill App2d 238, 149 NE2d 430; 21 ILP, Injunctions, § 11; 43 CJS 425, 426.)

Affirmed.

MURPHY, J, concurs.

BURMAN, J, took no part in the consideration or decision of this case.