NEW PARK FOREST ASSOCIATES II, Plaintiff-Appellant, v. ROGERS ENTERPRISES, INC., d/b/a Rogers & Hollands Jewelers, Defendant-Appellee.

First District (6th Division)   No. 1—89—0976

Opinion filed March 23, 1990.

Hopkins & Sutter, of Chicago (John F. Zabriskie and Michael W. Early, of counsel), for appellant.

Katten, Muchin & Zavis, of Chicago (Francis X. Grossie, Jr., and Andrew M. Hale, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

New Park Forest Associates II (New Park Forest), a shopping center, brought action against defendant Rogers Enterprises (Rogers),

its tenant, requesting the court to enjoin that tenant from vacating its store in The Center at Park Forest (the Center) during the lease term. The trial court denied plaintiff's motion for a temporary restraining order. The court also granted defendant's section 2—615 motion (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) and dismissed that portion of the complaint seeking injunctive relief and specific performance. Plaintiff appeals.

The issues are: (1) whether plaintiff's law remedy was inadequate and, if so, (2) whether the lease should be specifically enforced.

The undisputed facts are that New Park Forest's predecessor in interest and Rogers entered a lease which provided for Rogers' rental of space in the Center until approximately December 31, 1997. In article 5, section 5.1, the lease contained the following continuous occupancy clause:

> "Tenant shall occupy the Premises upon commencement of the Main term and thereafter shall continuously and uninterruptedly operate from and use the Premises for the permitted use as set forth in clause (n) of the Fundamental Lease Provisions (Permitted Use) and for no other purpose whatsoever without the prior written consent of Landlord, which can be withheld for any reason whatsoever. Tenant shall not vacate or abandon the Premises at any time during the Term."

The lease defined Rogers' permitted use as the operation of a store for the "sale and repair of better quality jewelry."

On October 1, 1987, Rogers opened its store at the Center and thereafter operated continuously for 15 months. On December 27, 1988, Rogers informed New Park Forest that it was removing inventory and vacating the store on that date.

New Park Forest immediately filed suit and stated in its amended complaint that Rogers' lease violation would cause irreparable injury because defendant's closing would diminish traffic at the Center, thereby decreasing the value of the Center to the landlord and existing and potential tenants. Plaintiff alleged that "damages cannot be ascertained, and a damage remedy would be impractical and inadequate." Plaintiff further alleged that Rogers' sales report showed annualized sales of $250 per square foot, about average for shopping centers, and therefore Rogers would not suffer severe harm if forced to continue operations at the Center.

New Park Forest concluded with a prayer for relief in the form of: (1) a temporary injunction to prevent Rogers from vacating its premises at the Center; (2) an order for specific performance on Rogers' obligation to operate and use the leased premises for maximum

business; (3) a permanent injunction to prevent Rogers from violating the lease; and (4) "other relief as is just and appropriate."

On December 28, 1988, the court denied the plaintiff's motion for a temporary restraining order and continued the matter to January 11, 1989, for status. Rogers did not file an answer, but instead, on January 9, 1989, filed a motion to dismiss the amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615).

The motion argued that New Park Forest had failed to state a claim for specific performance because the lease agreement was in the nature of a personal service contract and that plaintiff had an adequate remedy at law. The motion further stated that the claim for injunctive relief should fail because plaintiff had not alleged irreparable injury and that plaintiff had an adequate remedy at law.

In a supporting memo, Rogers argued that if specific performance were granted, the court would be placed in the untenable situation of a long-term supervisor and may be required to enforce lease terms for occupancy and use, operating hours, signs, painting, displays, common areas, and other operational requirements.

The trial court heard Rogers' motion and held that: "Plaintiff here, in essence, *** is alleging a breach of contract, and money damages are ascertainable by a trier of fact. They may be difficult. Again triers of fact hear all sorts of difficult items." In that order, the court ruled "there is no basis for equitable jurisdiction alleged in the amended complaint" and accordingly dismissed all prayers for equitable relief. The court then transferred the remaining money action to the law division.

Before the substantive issues may be addressed, we must consider a jurisdictional issue not addressed by the parties.

■■ ■ The trial court denied plaintiff's motion for a temporary restraining order on December 28, 1988, and continued the matter to January 11, 1989, for status. While an order denying injunctive relief is interlocutory, it is appealable pursuant to Supreme Court Rule 307 (107 Ill. 2d R. 307). On January 9, defendant filed a motion to dismiss the complaint pursuant to section 2—615. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) That motion was granted at the hearing on March 14, 1989, as to the equitable counts only. Although this order is final in that it involves a final determination as to the rights of the parties that is sufficiently distinct from any matter left pending, it is not appealable absent an express written finding pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). No such finding is contained in the record *sub judice*. Therefore, although we may review the dis-

missal of plaintiff's request for injunctive relief, we may not directly review the dismissal of its request for specific performance. This issue becomes moot, however, for reasons set forth later in this opinion.

■■ ■ A party who seeks a preliminary injunction must plead that: (1) he possesses a clearly ascertainable right or interest which needs protection; (2) he will suffer irreparable injury without protection; (3) there is no adequate remedy at law; (4) there is likelihood of success on the merits; and (5) he will suffer more harm without the injunction than the defendant will suffer with it. (*Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.* (1986), 143 Ill. App. 3d 285, 291, 492 N.E.2d 969, 974.) Thus, a complaint for preliminary injunction must plead facts which clearly show a right to injunctive relief. (*Lake in the Hills*, 143 Ill. App. 3d at 291, 492 N.E.2d at 974.) In addition, a party seeking a mandatory injunction for specific performance must show such "extreme urgency or 'great necessity' " that "the need for such relief [is] *** clearly established and free from doubt." *Ambassador Foods Corp. v. Montgomery Ward & Co.* (1963), 43 Ill. App. 2d 100, 105, 192 N.E. 572, 575.

■■ ■ If the well-pleaded facts in the complaint are taken as true, as is the standard pursuant to section 2—615, then New Park Forest has set forth a right entitled to protection. Further, New Park Forest cites studies on the fact that a tenant's defection from a shopping center can cause irreparable injury because each tenant contributes uniquely to the total tenant mix. (See, *e.g.*, 2 R. Powell, Real Property §242 (1987).) On the same point, plaintiff notes that Illinois courts have recognized that each tenant in a shopping center operates to attract customer traffic to the common area. (*Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 556, 281 N.E.2d 462, 468.) In this case, New Park Forest claimed that the defection of Rogers would lessen customer traffic, which in turn would harm the Center and the other tenants. Therefore, plaintiff has pleaded irreparable harm.

The third element, inadequacy of plaintiff's legal remedy, is not as clear. On this issue New Park Forest cites one Canadian case and five from other jurisdictions in the United States for the proposition that a tenant's breach of a continuous use clause creates irreparable injury for which money damages are inadequate. (See *Lonoke Nursing Home, Inc. v. Wayne & Neil Bennett Family Partnership* (1984), 12 Ark. App. 282, 676 S.W.2d 461; *Lincoln Tower Corp. v. Richter's Jewelry Co.* (Fla. 1943), 12 So. 2d 452; *Madison Plaza, Inc. v. Shapira Corp.* (Ind. Ct. App. 1979), 387 N.E.2d 483; *Dover Shopping Center, Inc. v. Cushman's Sons, Inc.* (1960), 63 N.J. Super. 384, 164

A.2d 785; *Slater v. Pearle Vision Center, Inc.* (Pa. Super. 1988), 546 A.2d 676.) New Park Forest claims further that no amount of money can compensate for Rogers' unique contribution to a tenant mix and that only specific performance will maintain that mix.

The trial court ruled that money damages are ascertainable by a trier of fact even if arriving at the proper figure for these damages might be difficult.

Support exists for both positions. But even if we assume *arguendo* that money damages cannot fully compensate this plaintiff, New Park Forest still cannot obtain an injunction unless it sets forth facts that establish all five elements.

■ The fifth element balances the equities so that an equitable remedy will not be granted unless it will bring more benefit to the plaintiff than harm to the defendant. Plaintiff satisfies this element because, according to facts pleaded in the complaint, Rogers was making a profit and would not suffer unduly from being forced to maintain its store in the Center.

■ This leaves only the fourth element, which is whether New Park Forest had a likelihood of success on the merits. In this case, success on the merits means that the court would order specific performance of the long-term lease.

■ The question, then, is whether the lease in question is the type that courts will specifically enforce. Furthermore, the standard for reviewing the trial court's decision to grant or deny specific performance is that "a decree will not be disturbed absent an abuse of discretion." *Chariot Holdings, Ltd. v. Eastmet Corp.* (1987), 153 Ill. App. 3d 50, 56, 505 N.E.2d 1076, 1081.

■ Generally, Illinois courts have refused to enter mandatory injunctions to enforce contracts "which by their terms call for a succession of acts whose performance can not be consummated by one transaction, and which require protracted supervision and direction. A court of equity will not assume what it can not practically accomplish." (*Grape Creek Coal Co. v. Spellman* (1891), 39 Ill. App. 630, 632.) More recently, the *Ambassador Foods* court refused to grant specific performance for a tenant who wanted to retain its concession in a department store for the remaining two years of a lease because

> "performance will extend over a considerable period of time and include a series of acts ***. Equity does not undertake to enforce contracts which require the performance of varied and continuous acts, or the exercise of special skill, taste, and judgment, because the execution of the decree would require such constant superintendence as to make judicial control a matter

of extreme difficulty." *Ambassador Foods*, 43 Ill. App. 2d at 105-06, 192 N.E. at 575-76.

One of the foreign cases cited by New Park Forest supports the proposition that a court might be willing to enforce a continuous use clause which involves the protection of third parties. In *Lonoke*, a building owner obtained an injunction from the lower court to compel its tenant to continue operating a nursing home on the premises for the duration of the lease instead of moving all the patients at once to a newly built facility. (*Lonoke*, 12 Ark. App. at 284-86, 676 S.W.2d at 463.) *Lonoke* is distinguishable from the case here, however, on public policy grounds. In addition, the case comes from another jurisdiction and has not been directly followed even in that jurisdiction.

New Park Forest cites two other foreign cases which directly support the proposition that the landlord of a shopping center is entitled to a mandatory injunction to enforce a continuous use clause against a tenant. In *Lincoln Tower*, a Florida court granted an injunction ordering a retail tenant to stay open year-round, according to the terms of the lease. (*Lincoln Tower*, 12 So. 2d at 453-54.) While the court discussed the irreparable injury suffered by the landlord and other tenants, it did not suggest why it would undertake to supervise a lease. (*Lincoln Tower*, 12 So. 2d at 453-54.) *Lincoln Tower* does, however, differ from the case here in that the tenant did not seek to break or change the lease in any respect except that it wanted to close its store during the slow season. Thus, court supervision would only extend to the single act of seeing that the tenant opened for normal business during the off season. Additionally, this is a Florida case and since 1943 has been followed only once, on the issue of how to interpret lease terms. *Jerrico, Inc. v. Washington National Insurance Co.* (Fla. App. 1981), 400 So. 2d 1316.

In *Dover*, a New Jersey court granted specific performance for a shopping center by ordering the defendant to reopen its bakery, resume business, display its name, and have someone in charge. (*Dover*, 63 N.J. Super at 392, 164 A.2d at 790-91.) The plaintiff in *Dover* waived any judicial supervision and stated it would rely solely on the defendant's self-interest in maintaining a good business reputation. (*Dover*, 63 N.J. Super at 392, 164 A.2d at 790.) The lower court limited its supervision so that it gave "no direction with respect to the method of operating the defendant's business on the demised premises or to the quality of the products sold and services rendered by the defendant therein." (*Dover*, 63 N.J. Super at 395, 164 A.2d at 791.) *Dover*, then, supports specific performance on a continuous use lease, but only if the court does not have to supervise this perform-

ance in any detail.

Defendant Rogers, on the other hand, cites numerous out-of-jurisdiction cases that refused to enforce continuous use clauses in shopping center leases explicitly because this enforcement would place the courts in the business of supervising leases. (See *Lorch, Inc. v. Bessemer Mall Shopping Center, Inc.* (Ala. 1975), 310 So. 2d 872; *Madison Plaza*, 387 N.E.2d 483; *Security Builders, Inc. v. Southwest Drug Co.* (Miss. 1962), 147 So. 2d 635; *Grossman v. Wegman's Food Markets, Inc.* (1983), 43 A.D.2d 813, 350 N.Y.S.2d 484; *Price v. Herman* (1948), 274 A.D. 813, 81 N.Y.S.2d 361.) In *Madison Plaza*, for example, the court distinguished *Dover* and found that an order for specific performance of a department store lease "would require the Court to maintain constant supervision over a long period of time of acts involving taste, skill, judgment and technical knowledge in order to enforce the decree." (*Madison Plaza*, 387 N.E.2d at 486.) In *Grossman*, a court denied specific performance for a shopping center that wanted to retain a food market for the remaining 12½ years of a 15-year lease. That court considered *Dover* "where specific performance was decreed in somewhat similar circumstances, but [was] not *** persuaded thereby that specific performance should be decreed in the case at bar." *Grossman*, 43 A.D.2d at 813, 350 N.Y.S.2d at 486.

New Park Forest cites two cases to show that Illinois courts will grant specific performance against a defendant who causes irreparable harm by withdrawing from a common enterprise. (See *Handy Andy Home Improvement Centers, Inc. v. American National Bank & Trust Co.* (1988), 177 Ill. App. 3d 647, 532 N.E.2d 537; *Sports Unlimited, Inc. v. Scotch & Sirloin of Woodfield, Inc.* (1978), 58 Ill. App. 3d 579, 374 N.E.2d 916.) These cases do not, however, involve the problem of enforcing a continuous use clause against a tenant.

Finally, as additional authority presented after argument, plaintiff cites a first district case in which a customer obtained specific performance of a contract for advertising in a magazine at reduced rates. (See *Gold v. Ziff Communications Co.* (1st Dist. Sept. 26, 1989), No. 1—89—0082.) Although *Gold* does support the need for an injunction to prevent irreparable harm, it does not address the problem of court supervision to enforce a contract that involves many acts over several years.

*Ambassador Foods*, the most similar Illinois case, involved a concessionaire tenant asking for specific performance of the remaining two years of his lease. (*Ambassador Foods*, 43 Ill. App. 2d 100, 192 N.E. 572.) Even in this situation, where the defendant landlord would normally be enforcing most lease terms, the court denied specific per-

formance expressly because a court "will not undertake such enforcement where the contract calls for a succession of acts whose performance cannot be consummated by one transaction, and which requires protracted supervision." *Ambassador Foods*, 43 Ill. App. 2d at 106-07, 192 N.E. at 576, quoting *Hernreich v. Lidberg* (1903), 105 Ill. App. 495, 500.

The contract in this case calls for Rogers' continuous occupancy and use of the leased space until approximately December 31, 1997, nine years after New Park Forest first requested an injunction and specific performance. The lease contains numerous detailed provisions for hours, signs, displays, painting, common areas and other operational requirements. Even the very purpose of the lease, the operation of a premises for the "sale and repair of better quality jewelry," raises enforcement problems for a court which could be placed in the position of deciding what constitutes "better quality." It is possible that, during the life of a mandatory injunction, the court would never have to enforce any of those terms or judge "better quality." Problems may never arise. If problems did arise, however, the court would find itself in the business of managing a shopping center.

■■ In sum, considering all well-pleaded facts in the complaint as true and considering all inferences that could be fairly drawn from those facts, it appears as a matter of law that New Park Forest does not present a likelihood of success on the merits because Illinois courts will not specifically enforce a long-term lease of this nature. Therefore, as an element of injunctive relief is absent, the court's denial of plaintiff's motion for a temporary restraining order and its dismissal of that portion of the amended complaint requesting injunctive relief was not improper.

Furthermore, although the dismissal of the specific performance request is not directly before us, that issue has now been resolved because it was necessary to determine New Park Forest's entitlement to specific performance in order to decide whether it properly pleaded an action for injunctive relief.

For those reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LaPORTA, P.J., and BILANDIC, J., concur.